UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEIRDRE MYERS and KENYA MYERS,

Plaintiffs,

- against –

THOMAS MOORE, CHARLES HAVEN, and
STEVEN CARABALLO,

Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/30/18
```

**MEMORANDUM
OPINION & ORDER**

13 Civ. 1006 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Deirdre Myers brings this action under 42 U.S.C. § 1983 against New

York City Police Department ("NYPD") officers Thomas Moore, Charles Haren,[1] and Steven

Caraballo.[2] (Am. Cmplt. (Dkt. No. 57)) Plaintiff's sole remaining claim is for malicious

prosecution, which arises out of her July 15, 2010 arrest. (Id. ¶¶ 9-36, 43-47)

The parties have filed cross-motions for summary judgment on Plaintiff's

malicious prosecution claim. (Def. Mot. (Dkt. No. 134); Pltf. Mot. (Dkt. No. 143)) Defendants

argue that they are entitled to summary judgment because Plaintiff's malicious prosecution claim

is deficiently pled, and because criminal proceedings against Plaintiff were not terminated in her

favor. (Def. Br. (Dkt. No. 135)) Plaintiff does not dispute that her malicious prosecution claim

is deficiently pled, but argues that the Amended Complaint should be conformed to the evidence

pursuant to Federal Rule of Civil Procedure 15(b). (Pltf. Opp. (Dkt. No. 148) at 6-7) For the

---

[1] The caption in the Amended Complaint erroneously names Charles Haren as Charles Haven.
(See Am. Cmplt. (Dkt. No. 57))

[2] Two plaintiffs are named in the Amended Complaint: Deirdre Myers and her daughter, Kenya
Myers. (See Am. Cmplt. (Dkt. No. 57)) Because this order relates only to a malicious
prosecution claim brought by Deirdre Myers, all references to "Plaintiff" are to Deirdre Myers.

reasons stated below, Plaintiff's malicious prosecution claim will be dismissed for failure to state a claim; Plaintiff's request that the Amended Complaint be conformed to the evidence will be denied; and Plaintiff's cross-motion for summary judgment will be denied as moot.

**BACKGROUND**

Although the parties have filed cross-motions for summary judgment, the legal issue addressed below is whether the Amended Complaint makes out a malicious prosecution claim under Section 1983. Accordingly, the Court begins with a recitation of Plaintiff's factual allegations in the Amended Complaint.

## I.    THE AMENDED COMPLAINT'S FACTUAL ALLEGATIONS

Plaintiff is African-American and lives in the Bronx. (Am. Cmplt. (Dkt. No. 57) ¶¶ 7, 9) On July 15, 2010, Plaintiff and her daughter were sitting on the stoop outside their residence, when they observed a car race up the block, going the wrong way down a one-way street. (Id. ¶¶ 9-10) The car stopped abruptly at the curb near Plaintiff and her mother, and Officer Moore, who was driving the vehicle, jumped out – leaving the driver's side door wide open – and began to run away. (Id. ¶ 11) The open door faced the curb near Plaintiff's residence. (Id.) Other cars then pulled up, and Sergeant Haren and Lieutenant Caraballo exited and gave chase, shouting, "stop, police." (Id. ¶¶ 12-13)

As Defendants Haren and Caraballo pursued Officer Moore, Plaintiff's daughter – a fifteen-year-old high school student – got off the stoop and approached the car's open side door. (Id. ¶¶ 6, 14) She observed what appeared to be cash and cigarettes lying on the front seat, and called to Plaintiff to join her. (Id. ¶ 15) As Plaintiff and her daughter peered into the car, police officers – who had approached from the side and rear of the car with weapons drawn and pointed at Plaintiff and her daughter – ordered them to "stop and get down on the fucking

2

ground." (Id. ¶¶ 17-18) Neither Plaintiff nor her daughter had taken anything from the vehicle. (Id. ¶ 23)

Plaintiff and her daughter were handcuffed, patted down, and held in custody on the sidewalk in front of their home. (Id. ¶ 19) After "some time," they were brought to the 44th Precinct, where they were held for several hours. (Id. ¶¶ 19, 21, 31) Plaintiff's daughter was released once officers verified that she was fifteen years old (id. ¶ 30), but Plaintiff was transported to Central Booking. (Id. ¶ 21) After two days in custody, Plaintiff – who was charged with petit larceny – was presented to a judge and released on her own recognizance. (Id. ¶¶ 22-23)

Over the next two years, Plaintiff was required to make court appearances on several occasions. (Id. ¶ 32) She received a series of steadily more favorable plea offers, which progressed from "probation, [to] a fine, [to] a B misdemeanor, and finally [to] a violation . . . ." (Id. ¶ 33) Plaintiff rejected all plea offers, however, and all charges against her were dismissed on January 24, 2013. (Id. ¶¶ 34, 36) In dismissing, the court noted that "the police went through elaborate lengths to contrive this scenario to lure, bait and trap a law abiding person into taking property." (Id. ¶ 35)

## II. PROCEDURAL HISTORY

### A. The Complaint, Defendants' 2013 Motion to Dismiss, and the Court's 2014 Dismissal Order

The Complaint was filed on February 13, 2013, and named the City of New York, Officer Moore, and John Does as defendants. (See Cmplt. (Dkt. No. 1)) Plaintiff asserted Section 1983 claims for false arrest and malicious prosecution; due process violations; violations of 42 U.S.C. § 1981 (racial discrimination) and 42 U.S.C. § 1985 (conspiracy); denial of the right to a fair trial; supervisory liability; and municipal liability under Monell v. Dep't of Social

3

Services, 436 U.S. 658 (1978). (See id. ¶¶ 29-48, 64-71) Plaintiff also asserted state law claims of negligent screening, hiring and retention; negligence; malicious abuse of process; intentional and negligent infliction of emotional distress; and municipal liability under a respondeat superior theory. (Id. ¶¶ 49-63)

On September 13, 2013, Defendants moved to dismiss pursuant to Rule 12(b)(6) and Rule 4(m) of the Federal Rules of Civil Procedure. (Dkt. Nos. 17-19) Defendants argued that dismissal was required because (1) Plaintiff had not served Defendant Moore; (2) Plaintiff had not adequately pled a Monell claim against the City; and (3) Plaintiff had not complied with state law notice of claim requirements. (Dkt. No. 18) On October 20, 2013, Plaintiff filed her opposition, and cross-moved for leave to file an amended complaint. (See Dkt. No. 21) In a September 29, 2014 Order, this Court granted Defendants' motion to dismiss, and denied without prejudice Plaintiff's motion for leave to amend, noting that Plaintiff had not submitted a proposed Amended Complaint. (Sept. 29, 2014 Order (Dkt. No. 24) at 15-16) The Court directed Plaintiff to file a motion to amend by October 24, 2014, and to include as an exhibit a proposed Amended Complaint. (Id. at 16)

## B. Plaintiff's 2014 Motion to Amend and The Court's 2015 Order

On October 24, 2014, Plaintiff filed a motion to amend. (Dkt. No. 26; see Proposed Am. Cmplt. (Dkt. No. 46))[3] In the proposed Amended Complaint, Plaintiff sought to reinstate Officer Moore as a defendant and to substitute Defendants Haren and Caraballo as defendants for the John Does. (See Proposed Am. Cmplt. (Dkt. No. 46)) Plaintiff also

---

[3] When Plaintiff filed her motion to amend on this District's Electronic Case Filing system ("ECF"), the proposed Amended Complaint was not included. (See Dkt. Nos. 26, 30-31) The proposed Amended Complaint was not entered on the ECF system until September 28, 2015. (Dkt. No. 46)

reasserted the same federal and state law claims alleged in the Complaint, and sought to add new

causes of action for failure to intervene, and for violations of the New York State and City

Human Rights Laws. (Id.) Defendants filed their opposition on November 19, 2014, arguing,

inter alia, that amendment would be futile. (Dkt. No. 34)

In a September 30, 2015 Order, this Court denied Plaintiff's motion to amend,

except as to Plaintiff's Section 1983 malicious prosecution claim.[4] (Sept. 30, 2015 Order (Dkt.

No. 48)) As to that claim, the Court granted leave to amend on the condition that Plaintiff "name

the officer responsible for the alleged prosecution, and plead facts supporting that assertion."

(Id. at 22) The Court gave specific instructions to Plaintiff as to what allegations were necessary

to adequately plead a malicious prosecution claim against a police officer:

> "'In malicious prosecution cases against police officers, plaintiffs have met [the] first
> element [of initiation of prosecution] by showing that officers brought formal charges and
> had the person arraigned, or filled out complaining and corroborating affidavits, or swore
> to and signed a felony complaint.'" Cunninham v. New York City, No. 04 Civ. 10232
> (LBS), 2007 WL 2743580, at *5 (S.D.N.Y. Sept. 18, 2007) (quoting Llerando-Phipps v.
> City of New York, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005)) (internal citations
> omitted). Accordingly, to state a malicious prosecution claim against any individual

---

[4] This Court held that Plaintiff's Section 1983 false arrest claim, and her Section 1985
conspiracy claim, were time-barred. (Sept. 30, 2015 Order (Dkt. No. 48) at 7-8, 19, 33-34) The
Court ruled that Plaintiff's failure to intervene claim failed because Plaintiff had not "allege[d]
which defendants failed to intervene when Plaintiff[] w[as] subjected to a false arrest, or how the
officers failed to intervene." (Id. at 19-20) Plaintiff's Due Process claims failed because they
were duplicative of her false arrest and malicious prosecution claims. (Id. at 25-26) Plaintiff's
Monell claim failed because Plaintiff had "not pled facts demonstrating that the City was the
"'moving force" behind the alleged injury,'" (id. at 31 (quoting Roe v. City of Waterbury, 542
F.3d 31, 37 (2d Cir. 2008))), or that "'officials with final policymaking authority had notice of
the illegal conduct' but 'chose to ignore it.'" (Id. (quoting Chin v. New York City Hous. Auth.,
575 F. Supp. 2d 554, 563 (S.D.N.Y. 2008))) Plaintiff's Section 1981 claim failed because
Plaintiff had not alleged any impairment to a contractual relationship. (Id. at 32-33) Plaintiff's
Section 1985 conspiracy claim and her Sixth Amendment fair trial claim were found too
conclusory to survive a motion to dismiss, because Plaintiff had not identified which Defendant
committed what misconduct. (Id. at 35, 37-38) Finally, Plaintiff's state law claims were found
insufficient because of her failure to comply with state law notice of claim requirements. (Id. at
42-43)

5

officer here, Plaintiff[] must allege that that officer engaged in such conduct. Allegations that he merely participated in Plaintiff['s] arrest are not sufficient.

(Id. at 22 n.12)

The Court noted that

[t]he proposed Amended Complaint does not plead facts demonstrating which officer is responsible for the alleged malicious prosecution of [Plaintiff], . . . even though Plaintiff[] ha[s] access to the criminal complaint filed against her. See Dkt. No. 45. Accordingly, [Plaintiff]'s motion to amend her Section 1983 malicious prosecution claim is granted on the condition that she name the officer responsible for the alleged malicious prosecution, and plead facts supporting that assertion.

(Id. at 22) (emphasis added)

The criminal complaint against Plaintiff is signed by Officer Moore. (Dkt. No. 45 at 2-3) The criminal complaint was available to Plaintiff from the date of her July 15, 2010 arrest, and was also produced to Plaintiff during discovery in the instant case on July 8, 2015. (See id. at 1)

The Court directed that any amended complaint was to be filed by October 30, 2015. (Dkt. No. 49)

On October 30, 2015, Plaintiff filed the Amended Complaint. (See Am. Cmplt. (Dkt. No. 57))[5] Inexplicably, the Amended Complaint did not contain any new allegations as to which officer had sworn out the criminal complaint against Plaintiff, and it reflected the same improper group pleading that the Court had previously ruled was insufficient. (Compare id. ¶ 43 ("Defendants knew that by filing false charges against Plaintiff[][, she] would very likely be held in custody, have to endure numerous court appearances, and the expense of hiring an attorney[,] and despite such belief, the Defendants fabricated evidence that plaintiff[] w[as] engaged in

---

[5] Due to filing errors, Plaintiff's Amended Complaint was not formally filed until November 17, 2015. (See Dkt. Nos. 53, 56, 57) All citations to the Amended Complaint refer to the November 17, 2015 filing. (Dkt. No. 57)

6

criminal activity."); and id. ¶ 45 ("Defendants' actions constituted malicious prosecution because they knowingly filed false and unsubstantiated charges against [] Plaintiff[], failed to drop them, or inform the District Attorney's office of the falsity of the charges and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated by the defendants.") with Proposed Am. Cmplt. (Dkt. No. 46) ¶ 47 ("Defendants knew that by filing false charges against Plaintiff[][, she] would very likely be held in custody, have to endure numerous court appearances, and the expense of hiring an attorney[,] and despite such belief, the Defendants fabricated evidence that plaintiff[] w[as] engaged in criminal activity."); and id. ¶ 49 ("Defendants' actions constituted malicious prosecution because they knowingly filed false and unsubstantiated charges against [] Plaintiff[], failed to drop them, or inform the District Attorney's office of the falsity of the charges and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated by the defendants.")) Indeed, the only new allegation regarding Plaintiff's malicious prosecution claim was that "Defendants [] refused to appear for Court to pursue the 'false' charge against plaintiff." (Am Cmplt. (Dkt. No. 57) ¶ 46)

On February 2, 2016, Defendants filed a letter seeking leave to move to dismiss the Amended Complaint's malicious prosecution claim under Rule 12(b)(6) for failure to state a claim. (Feb. 2, 2016 Def. Ltr. (Dkt. No. 72)) Defendants argued that the malicious prosecution claim should be dismissed because the Amended Complaint "still fails to plead sufficient facts demonstrating which particular officer is responsible for [Plaintiff's] alleged Section 1983 malicious prosecution. . . ." (Id. at 3) Defendants pointed out that Plaintiff had "failed to cure her deficiently ple[d] Section 1983 malicious prosecution claim even though she had access to the criminal complaint against her for at least [] six months[,] and even though the Court, in its

September 30, 2015 order, provided specific instructions as to how to cure [the pleading] deficiencies." (Id. (internal citations omitted))

On February 8, 2016, Plaintiff filed a letter in opposition, arguing that her pleading was sufficient and claiming that "Defendants . . . have refused to provide discovery, forcing plaintiffs to play a guessing game as to which of the individual defendant continued the prosecution and which individual defendant directed that a criminal complaint be filed." (Feb. 8, 2016 Pltf. Ltr. (Dkt. No. 75) at 2) Plaintiff did not deny that she had access to the criminal complaint signed by Defendant Moore, but claimed that "it is inconceivable that defendant Moore (the lowest ranked member of the group), signed the criminal court complaint and did not do so without being directed by a superior officer." (Id. at 2 n.2) Plaintiff did not seek leave to further amend her malicious prosecution claim at this time. Instead, she sought leave to file a Second Amended Complaint to assert a Monell claim based on "newly discovered evidence." (Id. at 3-4)

On April 7, 2016, the Court conducted a conference to discuss, inter alia, Defendants' request for leave to file another Rule 12(b)(6) motion. At that conference, the Court addressed the proposed motion as follows:

[T]here is a pre-motion letter pending before me seeking permission to file a motion to dismiss Plaintiff[']s malicious prosecution claim[,] and . . . my inclination on that score would be given that we are now in April and we have a fact discovery deadline of May 12th, it seems to me that the case should be moving towards dispositive motions and I just don't know that another motion to dismiss really makes any sense given that if there is going to be a summary judgment motion, I am going to want to set a schedule for that pretty quickly, and to the extent the malicious prosecution claim is defective then it obviously can be addressed in the context of that motion. I am not sure that seriatim motions – I mean, I have already addressed [the defective malicious prosecution claim] once on a motion to dismiss. I know that the City claims that it is still defective and maybe they're right, maybe they're wrong. I don't know. But, what I would suggest is it get wrapped in into a summary judgment motion.

8

(April 7, 2016 Tr. at 4 (emphasis added)) Defendants subsequently withdrew their request to file a Rule 12(b)(6) motion. (See June 17, 2016 Def. Ltr. (Dkt. No. 113) at 2 ("[W]hen defense counsel sought permission from the Court to file a second motion to dismiss, Your Honor, at the April 7, 2016 conference, suggested that defendants proceed with discovery and renew their arguments in their summary judgment motion, which defendants agreed to do."))

In a May 25, 2016 letter, Defendants sought leave to file a motion for summary judgment, renewing their argument that Plaintiff's "insufficiently pled malicious prosecution [claim] should be dismissed." (May 25, 2016 Def. Ltr. (Dkt. No. 110) at 3) That same day, Plaintiff filed a letter seeking, inter alia, leave to file a cross-motion for summary judgment, and leave to amend her pleadings "to conform to the evidence gathered from testimony and remove or highlight which defendant took part in which claims advanced by plaintiff." (May 25, 2016 Pltf. Ltr. (Dkt. No. 109) at 5) Following two additional letters from Plaintiff – one opposing Defendants' proposed motion for summary judgment (June 1, 2016 Pltf. Ltr. (Dkt. No. 111)), and another requesting an order directing Defendants to participate in preparing a joint pre-trial order (June 15, 2016 Pltf. Ltr. (Dkt. No. 112)) – Defendants reiterated in a June 17, 2016 letter that "Plaintiff [] has failed to . . . cure her pleadings despite ample opportunity to do so." (June 17, 2016 Ltr. (Dkt. No. 113) at 2)

In a July 13, 2016 letter, Plaintiff elaborated on her request for leave to file a Second Amended Complaint ("SAC"), promising that it would "articulate[] the role(s) played by the individual defendants, a feat that could not have been accomplished absent exchange of discovery which started early in 2016 and after the complaint was amended on October 30, 2015." (July 13, 2016 Pltf Ltr. (Dkt. No. 114) at 1 (emphasis in original)) Plaintiff also attached a proposed Second Amended Complaint, which alleged that

Defendants Moore and Caraballo knew that by filing false charges against Plaintiff[][,she] would very likely be held in custody, have to endure numerous court appearances, and the expense of hiring an attorney and despite such belief, the Defendants fabricated evidence that plaintiff was engaged in criminal activity. Defendant Moore completed the false arrest paperwork and fabricated evidence that plaintiff had commit[ted] a crime of petit larceny and criminal possession of stolen property. Defendant Caraballo approved [D]efendant Moore's paperwork before it was marked 'case ready' to be forwarded to the DA's office for prosecution.

(Proposed SAC (Dkt. No. 114-1) ¶ 43) The proposed Second Amended Complaint further

alleged that

Defendant Moore and Carab[a]llo's actions constituted malicious prosecution because they knowingly filed false charges against Plaintiff, failed to drop or withdraw them, or inform the District Attorney's office of the falsity of the charges and statements allegedly made by [P]laintiff[,] and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated by them.

(Id. ¶ 45)

In a response filed the next day, Defendants argued that "amendment at this late juncture would be prejudicial to defendants," as well as "futile." (July 14, 2016 Def. Ltr. (Dkt. No. 116) at 1) Defendants noted that, "[i]n spite of the Court's September 30th Order granting a conditional amendment, plaintiff failed to name a specific officer relating to her malicious prosecution claim as instructed by the Court." (Id. at 2 (emphasis in original)) Defendants also reminded the Court of their earlier request to file a second motion to dismiss the malicious prosecution claim:

As a result of plaintiff and her counsel's blatant failure to cure the defects in her malicious prosecution claim, defendants wrote to the Court [o]n February 2, 2016 seeking a pre-motion conference for permission to move to dismiss [Plaintiff's] malicious prosecution claim. However, during an April 7, 2016 conference, Your Honor suggested that the parties proceed with discovery and that defendants could renew their arguments regarding [Plaintiff's] malicious prosecution claim in a summary judgment motion, and defendants agreed. . . . Had defendants known that plaintiff's current application was forthcoming, defendants would have likely

10

insisted on a briefing schedule for their anticipated 12(b)(6) motion to dismiss plaintiff's malicious prosecution claim at the April 7th conference.

(Id. at 2-3)

On March 22, 2017, the Court set a briefing schedule for Plaintiff's motion for

leave to file a Second Amended Complaint, and denied the parties' requests for leave to file

cross-motions for summary judgment without prejudice. (Dkt. No. 118) The next day, Plaintiff

submitted a letter "to withdraw [her] request to amend the complaint," citing a "paraphras[e]" of

the Court's remarks during a telephone conference held in an "unrelated matter." (March 23,

2017 Pltf. Ltr. (Dkt. No. 119) at 1) Plaintiff's counsel explained that

> [o]n 12/8/16, Your Honor conducted a telephone conference with me and City counsel in an unrelated matter of Jose Deleon v. The City of New York, et al., 15 CV 9804 (PGG) (KNF). At that conference, Your Honor (among other issues) dealt with plaintiff's 8/30/16 request to file an amended pleading because the City counsel was seeking partial summary judgment. During that conference when Your Honor inquired why plaintiff needed to amend the pleadings, I informed the Court that defendants are seeking partial summary judgment but during the course of discovery, plaintiff obtained additional facts that could be incorporated into plaintiff's complaint and defeat summary judgment. Your honor stated (and I am paraphrasing here) that it is always the case that after a complaint is filed, discovery brings to light additional facts that have been unearthed and the complaint need not be amended because the facts/discovery speak for themselves.
> . . . .
>
> Based on Your Honor's ruling in Deleon, it appears that it is no longer necessary for plaintiff[] to amend [her] complaint in the instant matter because additional facts unearthe[d] after discovery can be incorporated into the complaint.

(Id.)

Three weeks later, Plaintiff renewed her request to file a motion for summary

judgment (Apr. 13, 2017 Pltf. Ltr. (Dkt. No. 122) at 1), and the Court entered a briefing schedule

for the parties' cross-motions for summary judgment. (Dkt. No. 123) In opposing Defendants'

motion for summary judgment, Plaintiff asserts that the Amended Complaint should be

conformed to the evidence adduced during discovery. (See Pltf. Opp. (Dkt. No. 148) at 6-7)

11

**DISCUSSION**

**I. SUMMARY JUDGMENT PREMISED ON FAILURE TO STATE A CLAIM**

    **A. Applicable Law**

        In moving for summary judgment, Defendants argue that "Plaintiff fails to state a viable malicious prosecution claim in her Amended Complaint." (Def. Br. (Dkt. No. 135) at 10)

        "The Second Circuit has recognized that, '[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon [a] motion for summary judgment.'" Risco v. McHugh, 868 F. Supp. 2d 75, 106 n.45 (S.D.N.Y. 2012) (quoting Schwartz v. Compagnie Gen. Transatlantique, 405 F.2d 270, 273 (2d Cir. 1968)); see also Eastway Const. Corp. v. City of New York, 762 F.2d 243, 250 (2d Cir. 1985) ("Although [the district court] relied on the affidavits submitted in support of the Rule 56 motion, and thus granted summary judgment, we believe it would have been equally proper to dismiss the civil rights count for failure to state a claim, pursuant to Rule 12(b)(6)."), superseded on other grounds by Fed. R. Civ. P. 11; Leary v. Manstan, No. 3:13-CV-00639 (JAM), 2015 WL 521497, at *5 (D. Conn. Feb. 9, 2015) (plaintiff moved for summary judgment on a counterclaim on the basis of the "legal sufficiency of [the] counterclaim, and not [on] the factual basis for the claim"; held that a "Rule 12(b)(6) motion to dismiss – and not a motion for summary judgment – [wa]s the appropriate vehicle for resolving the purely legal question presented by plaintiff's motion").

        Moreover, "[a] court may convert a motion for summary judgment into a [Rule] 12(b)(6) motion to dismiss a complaint for failure to state a claim without notice to either party," Scafe v. Pataki, No. 06-CV-6051 ARR, 2009 WL 2707317, at *6 (E.D.N.Y. Aug. 26, 2009) (citing Katz v. Molic, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989)), and "[c]onversion is appropriate when the court does not examine extrinsic evidence, but instead bases its decision solely on the

12

pleadings." Id. Where, as here, defendants argue that they are entitled to summary judgment because a claim is insufficiently pled, courts evaluate the motion under the Rule 12(b)(6) standard. See, e.g., Fields v. Wise Media, LLC, No. C 12-05160 WHA, 2013 WL 3812001, at *4 (N.D. Cal. July 19, 2013) ("Although defendant's motion is styled as a motion for summary judgment based on factual matters, . . . [a]s to arguments defendant raises based solely on the sufficiency of the allegations in the complaint, this order will consider those arguments as a motion to dismiss for failure to state a claim.") (citing, inter alia, Schwartz, 405 F.2d at 273); Gray v. Metro. Det. Ctr., No. 09-CV-4520 KAM LB, 2011 WL 2847430, at *5 (E.D.N.Y. July 15, 2011) ("Although defendants do not explicitly move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), they do argue with respect to [certain] claims . . . that such claims were not sufficiently stated. Accordingly, the court looks at defendants' motion under both Rule 56 and Rule 12(b)(6). To the extent that a defendant's motion for summary judgment under Rule 56 is based entirely on the plaintiff's complaint, a court may treat the motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6).") (citing Wade v Tiffin Motorhomes, Inc., 686 F. Supp. 2d 174, 181 (N.D.N.Y. 2009)); Cabrita Point Dev., Inc. v. Evans, No. CIV. 2006-103, 2008 WL 5455405, at *6 (D.V.I. Dec. 31, 2008) (dismissing, at summary judgment, a claim under the Rule 12(b)(6) standard because an element was insufficiently pled) (citing Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir. 1977) ("The district court could dismiss for failure to state a claim upon motion for summary judgment, but a motion so decided is functionally equivalent to a motion to dismiss.")).

Here, Defendants sought leave to file a second motion to dismiss Plaintiff's malicious prosecution claim (see Dkt. No. 72), but the Court stated that it would consider Defendants' Rule 12(b)(6) arguments at summary judgment. (See April 7, 2016 Tr. at 4)

Defendants have now moved for summary judgment, repeating their argument that the Amended Complaint's malicious prosecution cause of action fails to state a claim. Given these circumstances, the Court will apply the legal standard governing Rule 12(b)(6) motions.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Allegations that "are no more than conclusions, are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

## B.    Analysis

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of [her] rights under the Fourth Amendment[ ] . . . and must establish the elements of a malicious prosecution claim under state law."

14

Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations

omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must

prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination

of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding;

and (4) actual malice as a motivation for defendant's actions.'" Id. at 161 (quoting Murphy v.

Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks and citation omitted)).

As the Court stated in its September 30, 2015 Order, in order to adequately plead

a malicious prosecution claim against a police officer, a plaintiff must allege facts

> "'showing that [the] officer[] brought formal charges and had the person
> arraigned, or filled out complaining and corroborating affidavits, or swore to and
> signed a felony complaint.'" Cunninham v. New York City, No. 04 Civ. 10232
> (LBS), 2007 WL 2743580, at *5 (S.D.N.Y. Sept. 18, 2007) (quoting Llerando-
> Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005))
> (internal citations omitted). Accordingly, to state a malicious prosecution claim
> against any individual officer here, Plaintiff[] must allege that that officer engaged
> in such conduct. Allegations that he merely participated in Plaintiff['s] arrest are
> not sufficient.

(Sept. 30, 2015 Order (Dkt. No. 48) at 22 n.12)

Here, the Amended Complaint does not plead facts demonstrating which officer is

responsible for the alleged malicious prosecution of Plaintiff. Instead, Plaintiff engages in group

pleading, lumping the three defendants together without pleading facts demonstrating what each

did that makes him liable for malicious prosecution. (See Am. Cmplt. (Dkt. No. 57) ¶ 43

("Defendants knew that by filing false charges against Plaintiff[,] [she] would very likely be held

in custody, [would] have to endure numerous court appearances, and [would be burdened with]

the expense of hiring an attorney[,] and[,] despite such belief, the Defendants fabricated evidence

that [P]laintiff[] [was] engaged in criminal activity"); id. ¶ 45 ("Defendants' actions constituted

malicious prosecution because they knowingly filed false and unsubstantiated charges against []

15

Plaintiff[], failed to drop them, or inform the District Attorney's office of the falsity of the charges and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated by the defendants.")) Accordingly, the Amended Complaint does not sufficiently plead a malicious prosecution claim. See Leneau v. Ponte, No. 16 CV 776 (GHW), 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[In Section 1983 cases,] complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (internal quotation marks and citations omitted); Wright v. Orleans Cty., No. 14 CV 622, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) ("'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'"; accordingly, "[p]leadings that fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim") (quoting Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir.2013)).

## II. PLAINTIFF'S REQUEST THAT THE AMENDED COMPLAINT BE AMENDED TO CONFORM WITH THE EVIDENCE

### A. Federal Rule of Civil Procedure 15(b)

Plaintiff argues that the Amended Complaint should be amended to conform with the evidence obtained through discovery, pursuant to Federal Rule of Civil Procedure 15(b). (See Pltf. Opp. (Dkt. No. 148) at 6-7) Rule 15(b)(2) provides that

[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. . . .

16

Fed. R. Civ. P. 15(b)(2).[6] Although Rule 15(b) explicitly refers to amendment "[d]uring and [a]fter [t]rial," Fed. R. Civ. P. 15(b), "some courts have applied Rule 15(b) to conform pleadings to the proof offered at summary judgment."[7] Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey, 894 F. Supp. 2d 288, 336 n.44 (S.D.N.Y. 2012) (collecting cases); see also Clomon v. Jackson, 988 F.2d 1314, 1323 (2d Cir. 1993) ("[T]he undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b).").

"In deciding whether to allow amendment under Rule 15(b), the essential questions are whether the [] issues were [litigated] by the parties' express or implied consent and whether the defendant would be prejudiced by the implied amendment, i.e., whether [the defendant] had a fair opportunity to defend. . . ." Silverstein v. Penguin Putnam, Inc., 522 F.

---

[6] Rule 15(b)(1) applies when, "at trial, a party objects that evidence is not within the issues raised in the pleadings." Fed. R. Civ. P. 15(b)(1). Even assuming that Rule 15(b)(1) applies at summary judgment, it has no application here, because Defendants object to litigating an insufficiently pled claim, not to the admission of evidence.

[7] The circuits have split as to whether Rule 15(b) applies at summary judgment. The Second Circuit and several other circuits have applied Rule 15(b) at summary judgment. See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000) (applying Rule 15(b) at summary judgment); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1030 (6th Cir.1992) (same); U.S. for Use & Benefit of Canion v. Randall & Blake, 817 F.2d 1188, 1193 (5th Cir. 1987) (same). The Ninth and Eleventh Circuits have concluded that Rule 15(b) does not apply at summary judgment. See Crawford v. Gould, 56 F.3d 1162, 1168-69 (9th Cir. 1995) ("The present case did not go to trial; it was decided on motions for summary judgment. Therefore, the situation which Rule 15(b) addresses simply did not arise in the present case."); Blue Cross Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990) (finding Rule 15(b) "inapposite" at summary judgment). The issue has not been resolved in other circuits. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 676 F.3d 318, 327 n.7 (3rd Cir. 2012) (noting split of authority, collecting cases, and "declin[ing] to address the issue today"); Indep. Petroleum Ass'n of Am. v. Babbitt, 235 F.3d 588, 596 (D.C. Cir. 2001) ("It is an open question whether the Federal Rules permit parties to impliedly consent to 'try' issues not raised in their pleadings through summary judgment motions.").

Supp. 2d 579, 604 (S.D.N.Y. 2007) (internal quotation marks and citations omitted). "Rule 15(b) permits amendment only when the unpleaded issues are [litigated] with the express or implied consent of the parties." Id. (emphasis added) (citing Luria Bros. & Co., Inc. v. Alliance Assur. Co., Ltd., 780 F.2d 1082, 1089 (2d Cir. 1986) ("[T]he crucial test is whether the parties have consented to litigation of the issue.")); see also Panolam Indus. Int'l, Inc. v. F&F Composite Grp., Inc., No. 07-CV-01721 (AWT), 2014 WL 12752714, at *6 (D. Conn. July 14, 2014) ("'In a motion under Rule 15(b) to amend the complaint to conform to the proof, the most important question is whether the new issues were tried by the parties' express or implied consent and whether the defendant would be prejudiced by the implied amendment. . . .'") (quoting Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1086 (2d Cir. 1977)).

Because the unpled issue "must have been tried by [the parties'] express or implied consent," Luria Bros., 780 F.2d at 1089, courts commonly do not reach the issue of prejudice where the party opposing amendment has not consented to litigate the unpled issue. See Khurana v. JMP USA, Inc., No. 14 CV 4448 (SIL), 2017 WL 1251102, at *11 (E.D.N.Y. Apr. 5, 2017) (holding that Rule 15(b)(2) did not "allow the addition of [] otherwise unpled causes of action," because defendant "neither expressly or implicitly consent[ed] to the pleadings being amended"; not reaching the issue of prejudice); Christoforou v. Cadman Plaza N., Inc., No. 04 CV 08403 (KMW), 2009 WL 723003, at *5-6 (S.D.N.Y. Mar. 19, 2009) (denying plaintiffs' Rule 15(b)(2) motion to amend the pleadings to add unpled claims because defendant "did not implicitly [or explicitly] consent to trial of the additional claims"; not reaching the issue of prejudice); see also P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc., No. 14 CV 901(BRO), 2016 WL 6818758, at *4 (C.D. Cal. Aug. 10, 2016) (denying plaintiff leave to amend under Rule 15(b) because defendant had not consented to trying the unpled issue; not addressing prejudice).

"[C]onsent [] may be implied from the opposing party's failure to object,"

Silverstein, 522 F. Supp. 2d at 204 (citing Luria, 780 F.2d at 1089), "'effective engagement,'" or

"'silent acquiescence.'" Id. (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st

Cir.1995)). "Consent is not implied through an alleged understanding between the parties or

through, for example, statements in responsive Local Rule 56.1 Statements." Ho Myung

Moolsan, Co. v. Manitou Mineral Water, Inc., No. 07 CV 07483 (RJH), 2010 WL 4892646, at

*14 (S.D.N.Y. Dec. 2, 2010), aff'd, 501 F. App'x 85 (2d Cir. 2012).

Here, Defendants have not expressly consented to litigating Plaintiff's deficient

malicious prosecution claim. When Plaintiff sought leave to amend the original complaint in late

2014, for example, Defendants argued that the proposed Amended Complaint "fail[ed] to allege

even the most basic recitation of the elements of [malicious prosecution,] and [to] attribute them

[to] particular defendants." (See Dkt. No. 34 at 20) After the Court granted Plaintiff leave to

amend her malicious prosecution claim – "on the condition that she name the officer responsible

for the alleged malicious prosecution, and plead facts supporting that assertion" (see Sept. 30,

2015 Order (Dkt. No. 48) at 22), and Plaintiff filed the Amended Complaint (Am. Cmplt. (Dkt.

No. 57)), Defendants objected, arguing that the Amended Complaint "still fails to state a viable

Section 1983 malicious prosecution [claim]," and sought dismissal under Rule 12(b)(6). (Feb. 2,

2016 Def. Ltr. (Dkt. No. 72) at 2) And when Plaintiff requested leave to file a motion to

conform the Amended Complaint to the evidence, Defendants opposed that request. (See July

14, 2016 Def. Ltr. (Dkt. No. 116) at 2 ("[A]pproximately 287 days after the Court's September

[30, 2015] Order setting forth the deadline to amend her pleadings, plaintiff . . . attempt[s] an end

run around the Court's September 30th Order by belatedly seeking an amendment for a second

time in order to mask [her] own failures in non-compliance with the same. . . . Moreover,

19

plaintiff . . . attempt[s] to mislead the Court by claiming that plaintiff is not seeking to add new claims when, in fact, she is asserting a new malicious prosecution claim against defendant Caraballo who did not prepare or sign the accusatory instrument (or the criminal complaint) . . . .") (emphasis removed)) Plaintiff then withdrew her request for leave to file a motion to have the Amended Complaint conform to the evidence. (See March 23, 2017 Pltf. Ltr. (Dkt. No. 119))

In sum, Defendants have repeatedly and consistently argued that Plaintiff has not properly addressed the pleading defect in the malicious prosecution claim cited by the Court in its September 30, 2015 Order, and that, as a result, the malicious prosecution claim must be dismissed. (See Def. Reply (Dkt. No. 138) at 6 ("The Court gave Plaintiff a single task in sufficiently pleading malicious prosecution, which Plaintiff failed to do. As a result, the initial deficiency still remains, and the complaint should be dismissed."); July 14, 2016 Def. Ltr. (Dkt. No. 116) at 2 ("[T]he Court [] allowed plaintiff . . . to amend her complaint to add a malicious prosecution claim on the condition that she name the proper party and plead facts that support that claim. Plaintiff . . . failed to satisfy that condition and failed to properly cure the pleading defects in her sole claim for malicious prosecution despite ample opportunity to do so. . . .") (emphasis removed and internal citation omitted); May 25, 2016 Def. Ltr. (Dkt. No. 110) at 2 ("[T]he Court has provided plaintiff . . . ample opportunity to amend her pleadings and cure any deficiencies since September 30, 2015, but she has failed to do so. . . ."); Feb. 2, 2016 Def. Ltr. (Dkt. No. 72) at 2 ("[P]laintiff . . . has failed to cure her deficiently ple[d] Section 1983 malicious prosecution claim even though she had access to the criminal complaint against her for at least [] six months[,] and even though the Court, in its September 30, 2015 order, provided specific instructions as to how to cure [the pleading] deficiencies.") (internal citations omitted))

Defendants' repeated, vigorous, and explicit opposition to litigating Plaintiff's

deficient malicious prosecution claim likewise demonstrates that Defendants have not impliedly

consented to litigate that claim. See Posey v. NJR Clean Energy Ventures Corp., No. 14 CV

6833 (FLW) (TJB), 2015 WL 6561236, at *2 n.1 (D.N.J. Oct. 29, 2015) (where a defendant has

"explicitly opposed [] amending the Complaint," the defendant "has not given implied consent,"

and "Rule 15(b)(2) cannot apply"); Dorsey v. Aetna Life Ins. Co., No. 12 CV 90 (RGD), 2013

WL 1288165, at *23 n.10 (E.D. Va. Mar. 26, 2013) (holding that there was no "implied consent"

under Rule 15(b)(2) where defendant "explicitly refused to consent [by] objecting in its reply

brief to the plaintiff's introduction of [a] new claim in opposition to [defendant's] summary

judgment motion"); Taylor v. Mills, 892 F. Supp. 2d 124, 138 (D.D.C. 2012) (a response "made

under protest" at the summary judgment stage does not show "implied[] consent[]" to litigate an

issue for the purposes of Rule 15(b)(2)).

Accordingly, Rule 15(b) does not authorize this Court to conform the Amended

Complaint to the evidence adduced during discovery. See Liberty Lincoln-Mercury, Inc. v. Ford

Motor Co., 676 F.3d 318, 326-27 (3d Cir. 2012) (holding that defendant was entitled to summary

judgment on plaintiffs' claims that "Ford failed to reimburse them for certain engine and

transmission assembly repairs[,] . . . [b]ecause the complaint failed to provide notice to Ford

regarding its alleged failure to reimburse [plaintiffs] for these repairs"; rejecting plaintiffs'

argument that, even if these claims "were not raised in the pleadings, [they were] raised in the

motion for summary judgment, [and] should be treated in all respects as if raised in the

pleadings" under Fed. R. Civ. P. 15(b)(2); "[a]ssuming, without holding, that Rule 15(b) applies

at the summary judgment stage," defendant was entitled to summary judgment because plaintiffs

"failed to prove that Ford expressly or impliedly consented to try the engine and transmission

21

and assembly claims"); P.E.A. Films, 2016 WL 6818758, at \*3-4 (defendant sought judgment on the pleadings, or in the alternative, summary judgment on plaintiff's claim that "[d]efendant ha[d] misclassified [a distributor] under the [parties'] [a]greements as a 'servicing company,' rather than as a 'subdistributor,' which resulted in [d]efendant miscalculating and underpaying [plaintiff under the agreements]"; the court ruled that that claim was "not pleaded sufficiently," and then considered plaintiff's request that the court "treat its Opposition to [d]efendant's motion as a request pursuant to Rule 15(b) to amend its Complaint"; after noting that "Rule 15(b) allows a complaint to be implicitly amended when the parties have expressly or impliedly agreed to the amendment by failing to object to the evidence on an unpleaded issue," the court declined to "consider the pleadings amended pursuant to Rule 15(b)," because defendant had "repeatedly challenged [p]laintiff's efforts to pursue its misclassification claim").

## B.    Federal Rule of Civil Procedure 16

Having concluded that Rule 15(b) does not apply, the Court will consider Plaintiff's request to amend her pleading under Rule 16.[8]  Rule 16 provides that, after a Court enters a scheduling order, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Under Second Circuit precedent, . . . 'the Rule 16(b) "good cause" standard . . . governs a motion to amend filed after the deadline a district court has set for amending the pleadings.'"  Leary, 2015 WL 521497, at \*3 (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)); see also BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC, 859 F.3d 188, 195 (2d Cir. 2017) ("Where . . . a scheduling order governs amendments to the complaint, and a plaintiff wishes to amend after the deadline to

---

[8]  Plaintiff has only requested leave to amend under Rule 15(b) (see Pltf. Opp. (Dkt. No. 148) at 6-7), and has not addressed Rule 16 in any fashion.

22

do so has passed, the plaintiff must show good cause to modify the deadline under Rule 16.");
Pasternack v. Shrader, 863 F.3d 162, 175 n.10 (2d Cir. 2017) ("[W]here a schedule has limited
the time to amend a complaint, the plaintiff who wants to amend must satisfy Rule 16 by
showing 'good cause' to modify the scheduling order."). Here, the Court's deadline for
amending the Amended Complaint to add a properly pled malicious prosecution claim was
October 30, 2015. (See Dkt. No. 49) As discussed above, the Amended Complaint's malicious
prosecution claim has never been properly amended. Accordingly, under Rule 16, Plaintiff must
demonstrate good cause for amending the Amended Complaint.

    "Whether good causes exists turns on the 'diligence of the moving party.'"
Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). "[T]he movant must show that the
deadlines [could not] be reasonably met despite its diligence." Williams v. Town of Hempstead,
16 CV 1992 (ADS), 2017 WL 4712219, at *4 (E.D.N.Y. Oct. 18, 2017). Good cause does not
exist "when the proposed amendment rests on information that the party knew, or should have
known, in advance of the deadline." Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889
F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (internal quotation marks and citations omitted); see also
Parker, 204 F.3d at 341 (denying leave to amend where movant "had all the information
necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise
altered that fact"); Compania Embotelldora Del Pacifico, S.A. v. Pepsi Cola Co., 607 F. Supp. 2d
600, 602 (S.D.N.Y. 2009) ("[C]ourts have found good cause to be lacking where, as here, the
moving party had knowledge of the facts and circumstances in the case for a period of several
years and could have made their motion [to amend] within the specified time period.") (internal
quotation marks and citations omitted).

In addition to considering whether the moving party has shown good cause, "[t]he district court, in the exercise of its discretion under Rule 16(b), also <u>may</u> consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." <u>Kassner v. 2nd Ave. Delicatessen, Inc.</u>, 496 F.3d 229, 244 (2d Cir. 2007) (emphasis added). The court is not required to reach the issue of prejudice, however. <u>See</u> <u>Otegbade v. New York City Admin. for Children Servs.</u>, No. 12 CIV. 6298 (KPF), 2015 WL 851631, at *4 (S.D.N.Y. Feb. 27, 2015) ("[T]he Court declines to reach the issue of prejudice, as it has exercised its discretion to decide Plaintiff's application to amend under the 'good cause' standard of Rule 16(b)."); <u>see also</u> <u>Jackson v. Odenat</u>, 9 F. Supp. 342, 369-70 (S.D.N.Y. 2014) (rejecting argument that court erred in denying request to amend the complaint based solely on movant's lack of diligence and declining to consider prejudice).

Here, Plaintiff has repeatedly squandered opportunities to cure the defects in her malicious prosecution claim. Plaintiff has had access to the criminal complaint charging her since her arrest in July 2010, and the criminal complaint was produced to her during discovery in the instant case on July 8, 2015. (<u>See</u> Dkt. No. 45) When the Court conditionally granted Plaintiff leave to amend her malicious prosecution claim by October 30, 2015, Plaintiff did not cure the deficiency (<u>See</u> Am. Cmplt. (Dkt. No. 57)), despite clear direction from the Court regarding how to do so. (<u>See</u> Sept. 30, 2015 Order (Dkt. No. 48) at 22) Three months later, when Defendants argued that Plaintiff's malicious prosecution claim remained deficient and sought dismissal under Rule 12(b)(6) (<u>see</u> Feb. 2, 2016 Def. Ltr. (Dkt. No. 72)), Plaintiff argued that the claim was adequately pled. (Feb. 8, 2016 Pltf. Ltr. (Dkt. No. 75))

Approximately four months later, Plaintiff sought leave to cure the still-deficient malicious prosecution claim (May 25, 2016 Pltf. Ltr. (Dkt. No. 109)), and the Court set a briefing

schedule for Plaintiff's proposed motion to amend. A day later, however, Plaintiff "withr[e]w [her] request to amend the complaint," citing a "paraphras[e]" of the Court's remarks during a telephone conference held "in an unrelated matter." (March 23, 2017 Pltf. Ltr. (Dkt. No. 119) at 1) The Court's remarks in a different case, involving different facts, different legal issues, and a different procedural posture, give Plaintiff no basis to argue that her deficient malicious prosecution claim should survive. This Court ruled on September 30, 2015, that Plaintiff's malicious prosecution claim was deficient; explained why it was deficient; and instructed Plaintiff as to how the defect could be cured. (September 30, 2015 Order (Dkt. No. 48) at 22 & n.12) Plaintiff elected not to cure the defect.

Plaintiff now argues that she "did not know which defendant played what role until [she was] permitted to explore [the issue] during depositions" (Pltf. Opp. (Dkt. No. 148) at 6), and that "even if an officer is designated as 'an arresting officer' on police paperwork, that does not mean that officer made the actual arrest or the unlawful seizure." (Id.) Which officer "made the actual arrest or the unlawful seizure" is irrelevant to Plaintiff's malicious prosecution claim, however. See Cunninham v. New York City, No. 04 Civ. 10232 (LBS), 2007 WL 2743580, at *5 (S.D.N.Y. Sept. 18, 2007) ("In malicious prosecution cases against police officers, plaintiffs [meet] the first element [of initiation of prosecution] by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint.'"). Moreover, Plaintiff has known since at least July 2015 that Officer Moore signed the criminal complaint against her. (See Dkt. No. 45)

In sum, Plaintiff has not demonstrated good cause for amendment at this stage of

the litigation. Accordingly, Rule 16 does not authorize this Court to rule that the Amended

Complaint will be conformed to the evidence.[9]

---

[9] Defendants also argue that they are entitled to summary judgment because the dismissal of charges against Plaintiff was not a "favorable termination." (Def. Br. (Dkt. No. 135) at 13-14) This argument lacks merit.

The charges against Plaintiff were dismissed in the interest of justice under New York Criminal Procedure Law § 170.40 for several reasons, including that "the evidence of guilt [] [wa]s not overwhelming." (Dkt. No. 136-6 at 3) The criminal court judge explained that

> defense [counsel] contends that Ms. M[]yers intended to safeguard the property for the "arrestee," and the People do not seem to have any statements from [Ms. Myers], or anything else to counteract that perfectly reasonable defense. This is especially so [given that Ms. Myers] was arrested almost immediately. Had some time elapsed, the police would have been able to observe whether defendant left a note on the car to alert the owner to contact her for his property, or whether she instead took it with her or tried to use it.

(Id.)

Another "compelling" reason for dismissal was the "impact of a dismissal upon the confidence of the public in the criminal justice system":

> [T]o deny dismissal in this case, where, instead of using their time to fight the significant amount of serious crime in the county, the police went through elaborate lengths, involving the use of a car and several officers, to contrive this scenario to lure, bait and trap a law-abiding person into taking property, and then to draw their guns on a crowded public street to arrest her . . . would greatly damage the confidence and trust of the public in the fairness and effectiveness of the criminal justice system, and rightly so. . . . Dismissal in the interest of justice has been granted by other courts for less contrived situations.

(Id. at 4)

In Cantalino v. Danner, 96 N.Y.2d 391 (2001), the New York Court of Appeals rejected a "per se rule that a dismissal in the interest of justice can never constitute a favorable termination." Id. Instead, courts must apply a "case-specific rule," under which "the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." Id.

## CONCLUSION

For the reasons stated above, Plaintiff's malicious prosecution claim is dismissed

for failure to state a claim, Plaintiff's request to amend her pleading is denied, and Plaintiff's

cross-motion for summary judgment is denied as moot. The Clerk of Court is directed to

terminate the motions. (Dkt. Nos. 134, 143)

Dated: New York, New York
March 30, 2018

SO ORDERED.

*Paul G. Sardephe*

Paul G. Gardephe
United States District Judge

---

The Cantalino court determined that the interest-of-justice dismissal at issue in that case was a favorable termination, because the criminal court "stated in no uncertain terms that it was dismissing the case because the criminal charges against plaintiff were unfounded." Id. The Court of Appeals went on to explain that "[a] dismissal in the interest of justice is inconsistent with innocence [where] it represents mercy requested or accepted by the accused." Id. (internal quotation marks and citations omitted). As an example of a "mercy" dismissal, the Cantalino court cited Ward v. Silverberg, 85 N.Y.2d 993 (1995), in which "the Criminal Court recognized that plaintiff had committed the charged conduct, [but] did not believe a criminal sanction was appropriate." Cantalino, 96 N.Y.2d at 396 (interpreting Ward).

Given that the charges against Plaintiff were dismissed in part because of the weak proof of guilt, the dismissal was not inconsistent with innocence. See Bellissimo v. Mitchell, 122 A.D.3d 560, 562 (2nd Dep't 2014) (interest-of-justice dismissal "based upon the weakness of the proof of guilt . . . [wa]s not inconsistent with the plaintiff's innocence"). The Court concludes that the dismissal of criminal charges here constitutes a "favorable termination."

Defendants cite Lynch v. Suffolk Cnty. Police Dept., 348 F. App'x 672 (2d Cir. 2009), for the proposition that "[a] dismissal 'in the interest of justice' under New York Criminal Procedure Law § 170.40 'cannot provide the favorable termination required as the basis for a claim of malicious prosecution.'" Id. at 674 (quoting Hygh v. Jacobs, 961 F.2d 359, 368 (2d Cir. 1992)). Lynch is a summary order, however, and has no precedential effect. Moreover, it is clearly contrary to the rule announced in Cantalino. As several courts in this Circuit have noted, "'[b]ecause Lynch relies on Hygh, it appears that the Second Circuit overlooked the Court of Appeals' clarification of the law in Cantalino.'" Norton v. Town of Brookhaven, 47 F. Supp. 3d 152, 160 (E.D.N.Y. 2014) (quoting Guzman v. United States, 11 CIV. 5834 (JPO), 2013 WL 543343, at *8 (S.D.N.Y. Feb. 14, 2013), on reconsideration, 11 CIV. 5834 (JPO), 2013 WL 5018553 (S.D.N.Y. Sept. 13, 2013)); see also D'Olimpio v. Crisafi, 718 F. Supp. 2d 357, 368 (S.D.N.Y. 2010) (post-Lynch decision holding that Cantalino overruled Hygh).